UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| ALONZO AVILA § | |
| § | |
| Plaintiff § | |
| VS. § | CIVIL ACTION NO. 7:12-CV-454 |
| § | Criminal Case No. 7:11-cr-319-1 |
| UNITED STATES OF AMERICA § | |

## **OPINION AND ORDER**

Pending before the Court is Alonzo Avila's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.[1]  After considering the motion, applicable law and the evidence presented at the hearing held in this case, the motion is DISMISSED.

I. Procedural History and Relevant Facts

On March 9, 2011, Alonzo Avila ("Avila"), along with various other defendants, was indicted on multiple drug trafficking and related counts.[2]  Avila was arrested on March 10, 2011[3] and on the following day, March 11, 2011, attorney C.J. Quintanilla entered a notice of appearance on Avila's behalf.[4]  The initial appearance was also scheduled on March 11, 2011 but attorney Terry Palacios appeared in lieu of C.J. Quintanilla.  However, on March 16, 2011 C.J. Quintanilla filed a motion to withdraw which was granted on the same day.  Also, on March 16, 2011 attorney Eric Jarvis substituted as counsel for Avila and appeared with him at an arraignment held on the same date.[5]  With Jarvis still as his attorney, on July 1, 2011 Avila entered a plea of guilty to Count Two - conspiracy to launder money, and Count Five - possession with intent to distribute.[6]  On October 31, 2011 Avila was sentenced to 240 months imprisonment as to Count Two and 324 months as to Count Five, the sentences to run concurrent.[7]  Judgment was entered on November 18, 2011.[8]  While an appeal was not filed in this case, the current 28 U.S.C. § 2255 motion was timely filed on November 6, 2012.[9]

---

[1] Civil Case No. 7:12-cv-454, Dkt. No. 1.  ("Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. Unless otherwise noted, all references hereafter are to the underlying criminal case, 7:11-cr-319.)
[2] Dkt. No. 1.
[3] Unnumbered entry dated March 10, 2011.
[4] Dkt. No. 8
[5] Unnumbered entry dated March 16, 2011.
[6] Unnumbered entry dated July 1, 2011.
[7] Unnumbered entry dated October 31, 2011.
[8] Dkt. No. 198.
[9] Dkt. No. 285.

In his § 2255 motion, Avila raises two issues. Avila claims that both Quintanilla and Jarvis were ineffective for failing to obtain a cooperation agreement and that Jarvis failed to file a notice of appeal, as requested.

II. Discussion

*Legal Principles*

Under Title 28, United States Code, Section 2255 a federal prisoner who claims that his "sentence was imposed in violation of the Constitution or laws of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." Upon the filing of such a petition, the sentencing court must order a hearing to determine the issues and findings of fact "[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ."[10]

However, the Supreme Court has emphasized repeatedly that a "collateral challenge may not do service for an appeal."[11] A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude.[12] Additionally, a defendant may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default, and "actual prejudice" resulting from the error.[13]

Generally, a claim of ineffective assistance of counsel cannot be brought by direct appeal. Thus, it is proper grounds for a § 2255 claim. However, the inquiry does not end there. To obtain post-conviction relief due to ineffective assistance of counsel, a defendant must show (1) that counsel's representations fell below an objective standard of reasonable service, and (2) that this deficient performance prejudiced the defense such that the outcome of the trial or criminal proceeding would have been different.[14] A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action was sound trial strategy.[15]

*Analysis*

Here, Avila claims his first attorney, C.J. Quintanilla, was ineffective for failing to pursue a cooperation agreement with the Government before it filed its notice pursuant to 21 U.S.C. § 851. That notice was filed on March 15, 2011.[16] As noted above, Quintanilla filed his notice of appearance on March 11, 2011 and was permitted to withdraw on March 16, 2011. Thus, his representation was limited to five days. Significant to the Court's analysis, Quintanilla did not appear at Avila's arraignment, as Avila claims. In fact, Quintanilla withdrew before Avila was arraigned. It is clear from the record that Quintanilla's involvement in this case was very limited.

---

[10] 28 U.S.C. § 2255.
[11] *United States v. Frady*, 456 U.S. 152, 165 (1982).
[12] *Hill v. United States*, 368 U.S. 424, 428 (1962).
[13] *Frady*, 456 U.S. at 168.
[14] *Strickland v. Washington,* 466 U.S. 668, 687-91, 694 (1984).
[15] *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Ricalday v. Procunier*, 736 F.2d 203, 206 (5th Cir. 1984).
[16] Dkt. No. 22.

Nonetheless, the Court considers whether Quintanilla's performance fell below an objective standard of reasonableness. In this regard, Avila claims that after arrest, at the first meeting with Quintanilla, Quintanilla indicated there was little he could do, and that Avila would receive at least a thirty year sentence. Avila further claims he made it clear he was not a leader but rather had a limited role. The Court finds it difficult to belief that immediately after arrest, even before arraignment, Avila was cognizant of how his role could impact the guidelines or even his sentence such that he would raise the issue immediately. Avila also claims that he advised Quintanilla that Avila's supplier remained at large but he does not claim that he made it clear he wished to cooperate.[17] Avila's affidavit does make it clear that he had just the one meeting with Quintanilla before firing Quintanilla.[18]

Based on his very limited involvement, the Court cannot find, and does not find that Quintanilla's performance was deficient. Even if Avila had made it clear at the one and only meeting with Quintanilla that he wished to cooperate, Quintanilla's representation was terminated before he had the opportunity to perform at all.

Regarding the second prong, Avila cannot show prejudice. Even if Avila was interested in cooperating from inception, the filing of the § 851 notice would not prohibit cooperation. Avila does not suggest nor does he offer any facts to support a finding that the government would not have been willing to consider his cooperation despite the § 851 notice. In fact, the Court has seen cases where, upon the defendant's cooperation, the government withdraws a § 851 notice. Thus, the Court finds that Avila has failed to show prejudice.

Having determined that Quintanilla's performance was not deficient and that no prejudice has been shown, the Court finds that Avila has failed to show that he received ineffective assistance of counsel from C.J. Quintanilla.

The Court next considers whether Eric Jarvis provided ineffective assistance. As with Quintanilla, Avila claims in his motion that he advised Jarvis that he wished to cooperate but that Jarvis claimed it would be of no benefit because of Avila's role and the amount of drugs involve. The Court also heard evidence from both Jarvis and Avila on this issue. Jarvis testified that Avila was unhappy that he was ordered detained pending trial and that Avila indicated that if released he would be willing to provide information regarding an alien stash house. Despite Jarvis' reservation as to whether this would get Avila released, Jarvis communicated this information to the AUSA handling the case. The AUSA rejected the offer. According to Jarvis, Avila did not indicate he had any other information he was willing to share until Jarvis was notified of a letter Avila wrote to the AUSA. After being notified of the letter, Jarvis visited Avila. Avila then told Jarvis that the letter was only a ruse to get Jarvis to visit him and that Avila had no intention of cooperating. Significantly, the letter does corroborate Jarvis' claim that he had relayed the alien stash house offer to the AUSA but the AUSA was not interested.[19]

Avila testified that he wished to cooperate from inception but that Jarvis did nothing to facilitate the cooperation. Avila also claimed that his letter was his attempt to handle the matter himself rather than a ruse to get Jarvis to visit him. He further denied that Jarvis visited him after

---

[17] Dkt. No. 285, p. 7.
[18] Dkt. No 285-2, p. 2.
[19] Exhibit 1 from hearing dated May 19, 2015. "[M]y lawyer has told me that [AUSA] Anibal J. Alaniz is not interested in my saying anything."

Avila sent the letter.  However, it is undisputed that the government received that letter and notified Jarvis of the same.

Here, the Court finds Avila's testimony on this issue is not credible in many respects.  In particular, the Court accepts Jarvis' testimony that Avila only offered information about an alien stash house and disbelieves Avila that he offered information regarding the drug trafficking charges.  The Court's finding is supported by Avila's letter wherein Avila acknowledges that the AUSA is not interested in what Avila may have to say.  It is clear from this letter that Jarvis has let the AUSA know that Avila is willing to share information.  Although what information Avila wished to share is not noted in the letter, the Court finds it difficult to believe the AUSA would not be willing to talk to Avila about the case itself.  This supports Jarvis' testimony that Avila only offered the alien stash house.  If on the other hand the AUSA is rejecting Avila's offer to share information regarding this case, then Avila can have no claim.

Regardless, Avila accomplished what he wanted his attorneys to do.  He let the government know that he wished to cooperate. However, the government was apparently not interested in Avila's cooperation. It is well recognized that even when a defendant cooperates, the government has the discretion but not the duty to file a motion under § 5K1.1 of the United States Sentencing Guidelines.[20]  "It follows therefore that a defendant who provides substantial assistance without receiving a downward departure is not entitled 'to a remedy or even to discovery or an evidentiary hearing' unless the prosecution relied on an unconstitutional motive in refusing to file a 5K1.1 motion."[21]  Avila has not convinced the Court that he was willing to cooperate at all.  Nonetheless, on October 7, 2011 his letter to the government offered his cooperation but *that cooperation was not accepted*.  Thus, even if counsel's conduct fell below an objective standard of reasonableness, Avila cannot show prejudice.

Regarding the issue of an appeal, Avila claims in his motion that he discussed an appeal with Jarvis following the sentencing hearing.  Avila claims that he told Jarvis he "wanted to appeal.  Jarvis said that he would file an appeal [but] Jarvis never filed an appeal." Avila swore to this under penalty of perjury. [22]  Furthermore, in his motion Avila specifically claims that he "provided Jarvis with potential issues he wished for Jarvis to raise.  Specifically, Avila requested Jarvis raise, on appeal, the role in the offense finding."[23]  Jarvis, on the other hand, testified that he discussed an appeal with Avila and that while Avila was not happy with the sentence he received,  Avila did not request an appeal.  Jarvis specifically denied that Avila raised his role as an appellate issue.

Jarvis' testimony is somewhat corroborated by Avila.  Despite his claim to the contrary in his motion, Avila testified that he never discussed his appellate rights with Jarvis, that Jarvis never told him he could appeal, and that *Avila never told Jarvis that he wanted to appeal*. Obviously, Avila clearly contradicted himself and this alone causes the Court to question his credibility.  Avila also admitted that while he talked with his wife after the sentencing, he did not let her know he wanted to appeal, nor did he ask her to let Jarvis know that he wished to appeal.  Avila also initially testified that he was not advised by the sentencing Court of the right to appeal

---

[20] *Wade v. United States, 504 U.S. 181, 185 (1992).*
[21] *United States v. Garcia©Bonilla,* 11 F.3d 45, 46 (5th Cir. 1993)(*Wade v. United States,* 504 U.S. at 185.)
[22] Dkt. No. 285-2. p. 3.
[23] Dkt. No. 285, p. 10.

but then admitted that the Judge said something about having "14 days" to appeal. Significantly, while the record does reflect that the sentencing judge advised Avila of the right to appeal, the Court advised him that he "would have *two weeks* to do so." The Court never used the words "14 days."

It is clear from the record that Avila is lying about the appellate issue. In one instance he swears he told Jarvis to appeal, in another he claims he never discussed an appeal with Jarvis. Considering this outright contradiction, as well as Avila's demeanor during his testimony, the Court finds Avila is not credible. The Court finds that Jarvis properly advised Avila of his appellate rights but that Avila did not indicate a desire to appeal. This claim thus fails.

III.   CONCLUSION

It is clear from the evidence presented at the hearing on Avila's Motion, as well as the record as it currently stands, that Avila is not entitled to relief under 28 U.S.C. § 2255. Accordingly, Avila's Motion to Correct, Vacate, or Set Aside Sentence is DISMISSED. Additionally, should Avila seek a certificate of appealability, such is DENIED.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 30th day of June, 2015.

_____
Micaela Alvarez
United States District Judge